May it please the court. Mr. Washington had to prove that each individual, the Deputy Division Director of the Division of Adult Institutions of the Missouri Department of Corrections, the current and former warden, and this Corrections Classification Assistant, violated his clearly established Eighth Amendment rights. There is no respondeat superior liability under Section 1983. Each individual is only responsible for his or her own inaction. Therefore, Mr. Washington had to prove that each individual violated his Eighth Amendment rights. And the standard in an Eighth Amendment conditions of confinement case is akin to a criminal recklessness standard. That means it has an objective component and a subjective component. The objective component requires extreme deprivations, and that is only actions denying the minimal civilized measures of life's necessities are sufficiently grave to form the bases of the conditions of confinement claim under the Eighth Amendment. The subjective component is equally rigorous. The subjective component requires deliberate indifference. More than an ordinary lack of due care is required. And deliberate indifference means that an official must know of and disregard an excessive risk to inmate health or safety. Is there any question here that Mr. Washington made his condition and concerns for smoke in his presence known to the appropriate officials? Mr. Washington filed grievances, multiple grievances, on his claims. He filed some that complained about his cellmate smoking. He filed some claims that related to the ventilation system. He filed claims complaining that the designated area was within 25 feet of an entryway. And each of those grievances... Also, were they aware that he was asthmatic? He told them in his grievances that he had asthma. There's no evidence that they actually looked at his medical records to determine whether he did or not, and at least one of the doctors had questioned that. But he was treated for asthma, and the record was that he complained about that in his grievances, that he had asthma, and that he was... Did he employ an inhaler? Did he use an inhaler? Yes. Yes, he did, Your Honor. He was given an inhaler by the doctor, the medical staff at the prison. I thought it was undisputed here that they knew about his condition, each defendant. They knew about the policy regarding smoking in the cells, and actual knowledge of that. And unusually in these kinds of cases, they all knew that they were all deemed to have knowledge of Helling versus McKinley, which made it clearly established that this sort of condition being aggravated by secondhand smoke raised constitutional implications. So that being the case, unless and just you want to argue some of those, this is a fairly unusual qualified immunity situation, because the prongs are... Both prongs are known. Right. You know, they were aware of the serious medical condition. They were aware it was against a policy as well as constitutional law not to do something about it, and nothing was done. Well, and something was done, Your Honor. They reviewed his grievances. They have a policy... Yeah, they reviewed the grievances and rejected them. Right. At least they didn't... Okay. Well, and so for instance... Oh, so I'm not sure where you're going. You know, you've made an articulate statement of qualified immunity and deliberate and different standards that we deal with every week. Sure. Where does it go, given the undisputed facts here? Well, because what we're dealing with are the high-level officials. We're dealing with a deputy division director who doesn't sit in the prison in Cameron, Missouri. She's in Jefferson City, and her role in this is to review grievances. And she gets a grievance from Mr. Washington that says, my cellmate's smoking. And she looks at it, and he has a different cellmate. So she responds that his grievance has been handled. She receives a grievance that says the ventilation system, that Mr. Washington's complaining that the ventilation system works a certain way. They go to the maintenance staff who says, no, that's not the way it works. So she says, this grievance is unsubstantiated. Same with the designated smoking area within 25 feet. Now, this case was tried. Yes, Your Honor. And we're talking, so how did you preserve the qualified immunity issue at trial? We filed a judgment as a matter of law, arguing essentially the same thing we're arguing. Oh, but wait, but how did... It's preservable. Qualified immunity can be denied in the 12B6 stage. It can be denied at the summary judgment stage. And it's still live at trial. But it's not self-evident how it gets tried, what the court's function is and what the jury's function is, and to the extent the jury has a function, how it's instructed. So I would say a defendant that doesn't carefully work those things out, typically I would think in an instructions conference, has a forfeiture problem on appeal. Did the district court consider qualified immunity waived? She, in her order denying our last judgment as a matter of law motion, she said that we did not preserve the clearly established issue. We've argued from the get-go the first prong of qualified immunity, which is that there's no constitutional violation. But how did you do it at trial? Did you say at the end of the plaintiff's case, and again at the end of all the evidence, this is a question of law for the court, and I say there is no, did you do the Rule 50A exercise? Yes, yes, we went through at the end of plaintiff's evidence and we said based on all the evidence the plaintiff has presented, he has not shown that these individuals violated his constitutional rights. After the close of all evidence... Was that in 50A or B? 50A. And so we'll find the words qualified immunity in the colloquy before the jury verdict. We did not use the words qualified immunity in that motion. And what did you do with respect to the jury's role in particularly the deliberate indifference prong? We argued it as no constitutional violation because there was no deliberate indifference. Okay, and with respect to each defendant that went to the jury? Yes. Including the supervisory person you're complaining about today. And the jury found deliberate indifference? Yes. For each defendant individually? Right. Without objection to the instruction? Yes. And so now we're talking insufficiency of the evidence. We're not on the first prong of qualified immunity. We're appealing the decisions on our judgment as a matter of law, which is reviewed de novo, but it's in favor of the jury verdict. But this is a sufficiency of the evidence issue. Clearly established would not be. That's a question of law. Right. But it's clearly established under Helling v. McKinley. But the first prong of the constitutional violation is a question for the jury under 1983 jurisprudence. And Helling v. McKinley is different than this case where they had the. . . Of course it's rule 12b6 decision for one thing. Well, sure, but I mean just the facts. There was a policy in place here that bans smoking. Don't go off on a sidetrack. You started with constitutional violation, and I'm saying this is a sufficiency of the evidence argument post-verdict, isn't it? Essentially it is, but it's under a judgment as a matter of law. We're asking the. . . Yeah, but we get appeals from denials of a judgment of a. . . My client wasn't negligent, and the nasty district court denied my judgment as a matter of law and refused to overturn the jury verdict. And that's what we have here, except it's not negligence. It's a constitutional violation. I mean, yes, I guess essentially that is correct. We're arguing that the evidence was insufficient. All right, so where's the insufficiency as to the supervisor you were starting with? Her only role in this was reviewing his grievances, and those were the grievances I just went through. That was her action. She issued a decision. She didn't ignore his pleas. She made a determination on each of them. So the jury made a. . . Well, this was not supervisory liability. This was direct participation in the process. That's correct. Reviewing the grievance, denying the grievance, doing nothing about the grievance, allowing the smoke to continue, and so forth. And you're saying the evidence was insufficient to find a Helling v. McKinley violation. That's correct. The evidence was that they enforced the policy that was in place. Okay. I can read the trial transcript for that, and I can do it for each defendant. Now, what about clearly established, which is a question of law? Where did the district court make an error of law there? That this is not clearly established. In Helling v. McKinley. . . But the court had already ruled at the summary judgment stage? Yes. So you're renewing your summary judgment motion post-verdict. And you're going to lose that unless, well. . . So on appeal, now you can say the trial evidence should have caused the judge to change her summary judgment ruling, or you can say I'm doing a post-verdict appeal from the denial of my summary judgment motion. So which do we have? We did not appeal the denial of the summary judgment motion. We're saying. . . Which you could have, but you didn't have to. Right. What we're saying. . . So you're referring us back on clearly established to the summary judgment record. We're talking about. . . And saying the district court blew it as to qualified immunity, not as to liability. I mean, I would agree with that. But we're also saying the evidence at trial was insufficient to show that they were violated clearly established. Even if you take. . . But that's not an issue. That's an issue of law, isn't it? Whether clearly. . . How did the trial evidence change the summary judgment record with respect to clearly established? The trial record didn't change the summary judgment record. Okay. So, you know, you're making. . . Putting two heads on a one-headed horse, so to speak. I wasn't trying to. I know it. But, I mean, this is not. . . This is confusing stuff because most qualified immunity appeals that we get aren't on a trial record. So you have to stop and figure out what that means, the impact of having it tried. And one impact can be you can. . . The defense counsel can seek at the jury instruction stage to get some help from the jury on the first prong. The second prong is just for the court, what's clearly established. Right. Mr. Talbot, you're a times expert. Thank you. Thank you. Mr. Foster. Good morning, Your Honors. May it please the Court. Michael Foster for Appley Ecclesiastical Washington. Two arguments were raised on appeal following the district court's denial of the defendant prison official's motion for judgment as a matter of law. Those two arguments can be summarized as follows. You've got to speak up for me. I'm sorry, Your Honor. The two arguments can be summarized as follows. Did the record contain any evidence. . . Or, sorry. Did the record contain any probative facts from which the jury could find for Mr. Washington on a Section 1983 claim? And two, does the record support the jury's punitive damages award? Now, the first issue. . . No, on punitive damages, I have to. . . That's something I wanted to ask you. Has the Supreme Court ever, to your knowledge, addressed the question of the proper standards for punitive damages when the liability standard in the 1983 case is deliberate indifference? Obviously, when we're dealing with the 1983 case, dealing with deliberate indifference, it's very close to the punitive damage standard. Wait a minute. No, you're going to the friendly lower court law. My question is, has the Supreme Court ever addressed this? I don't believe so, Your Honor. The Supreme Court has said deliberate indifference is criminal recklessness. Yes. The Supreme Court has said you can have punitive damages in a 1983 case. Yes. But it's not. . . But it's got to be something worse than liability. Yes, it's got to be when a defendant's. . . That's correct, Your Honor. That is not harsher than the deliberate indifference standard. If anything, that's less harsh. So it seems to me the lower courts that have done that are disregarding Supreme Court jurisprudence, which is it's got to be worse than criminal recklessness or punitive damages. Now what's wrong with that proposition? The jury, we use the model, the Eighth Circuit model jury instructions. I don't care about that. I care about what the Supreme Court would do with this. They're the ones who grade our papers. No, I understand, Your Honor. It's our belief that the jury was properly instructed on punitive damages. There was no objection to our instruction on punitive damages. Well, but I mean our Coleman case says callous conduct is reckless conduct. That's no different or that's less stringent than the Supreme Court's definition of deliberate indifference. I think Coleman said that he calls for punishment over and above provided by the compensatory award. I mean, I read it, but you seize on the callousness. You don't want to go to the evil intent prong. Evil intent is fine. The Supreme Court wouldn't have any problem saying that if your deliberate indifference rose to evil intent, the court would properly consider punitives. We don't have that here. Well, I do think there is a difference between the punitive damages instruction in the Eighth Circuit and the section 1983 claim for deliberate indifference. What's the difference? How can it be more stringent after, what is it, Farmer v. Brennan parsed through recklessness and distinguished between civil and criminal recklessness and said deliberate indifference is criminally reckless? And here we have our courts just saying, well, if it's reckless, then it's callous, and there's discretion to award punitives. Well, with the punitives, the jury was asked if the defendant's conduct was reprehensible, Your Honor. And they were given a definition of what was reprehensible. Well, I would say deliberate indifference, criminally reckless conduct is reprehensible conduct. Say that again, Your Honor. Sorry. I would say the Supreme Court has told us in Farmer v. Brennan that deliberate indifference requires proof of reprehensible conduct. Yes, and I think there is reprehensible conduct here, Your Honor. Okay, but deliberate indifference isn't enough for punitives. The Supreme Court says it has to be worse than 1983 liability standard. It has to be reprehensible. No, the Supreme Court, you agreed with me, the Supreme Court has never addressed what being worse means when the liability standard is deliberate indifference. And what our court has blithely done, and I suspect every lower court, is just say, well, I'm going to look at the normal punitive damages standard, which is, you know, reprehensible conduct. Deliberate indifference is reprehensible conduct. Yes. And the Supreme Court has instructed, not every defendant who's liable under 1983 is liable for punitive damages. But I think there's an error of law here, a serious one. Your Honor, we used the jury instructions. Plain error, too, by the way. Otherwise, the way this case was tried and decided, every 1983 defendant who was found guilty of deliberate indifference liability conduct has invited the judge to award punitive damages. Well, if they find that conduct is reprehensible. I think there's a difference between reprehensible and deliberately indifference. Being deliberately indifferent to someone's... Well, only if the jury doesn't understand what deliberate indifference is supposed to mean, which is probably true. But the jury was instructed what deliberately indifference meant in this case. Pardon? The jury was instructed... They were told that criminal recklessness wasn't in the instruction. Criminal recklessness was not in the instruction. Yeah. So you see, I mean, our modern instruction... Our moral instructions are all wrong, too, on this. I mean, I can consider recklessness as disregarding that risk by intentionally refusing or intentionally failing to take reasonable measures to deal with the problem as deliberate... That's civil recklessness. That does not include the subjective standard of criminal recklessness. It's in between negligence and intent, Your Honor. And I still think that disregarding... Yeah, because you don't... Nobody wants to believe Farmer versus Brennan. That long discussion of deliberate indifference is not just gross negligence. It's not just civil recklessness. It's as close to evil intent as you can get. Your Honor, and Farmer v. Brennan says... It talks about failure to take reasonable measures to abate the risk. And here, there were no reasonable measures taken to abate the risk to Mr. Washington about the second answer. I'm talking the subjective component of deliberate indifference. And so, every defendant who is liable for deliberate indifference to a serious medical need has had knowledge such that he or she was criminally reckless. And this decision says, if we affirm the way it was decided, every one of those defendants at the district court's discretion is liable for punitives. I do think there's more to the instructions... There is more to the instructions for the punitive standard than deliberate indifference, Your Honor. I mean, we clearly defined what reprehensible means. It's, was there intentional malice for human health or safety? There was in this case. Say that again. There was or there wasn't? There was intentional malice for human health or safety in this case by these defendants. The jury found that? Yes, they did, Your Honor. They boarded punitive damages in this case, and this was not a runaway jury. Intentional malice was in the punitives instruction? Yes, it was, Your Honor. It was one of the ways to consider what reprehensible means. Well, it certainly wasn't in the district court's justification for punitives. The district court cited their jury instructions on Joint Appendix 629-639. I think it's on page... Oh, that's significant. And they did talk about what it meant to be reprehensible, and I'm going to go to the jury instructions on punitive damages, Your Honor. It says, in determining whether to award punitive damages, you should consider whether the defendant's conduct was reprehensible. And it talks, it goes on to talk about what you may consider, whether it was physical or economical pain by the plaintiff, whether there was intentional malice or reckless disregard for human health or safety, whether the defendants... But it's the or that's critical. It's the what? It's the or. I mean, that's what, that's what, that's what Coleman does. Coleman starts out with evil intent. Fine. And then it says, or... I don't see an or here, Your Honor. You just read me an or. Oh, physical or economic or both. And the or, or malice. Whether there was intentional malice or reckless disregard for human health or safety, whether the defendant's conduct that harmed the plaintiff also... Brennan, you just, you just... I might have said the or, but I didn't... Smothered an or in there. I'm sorry, Your Honor. I apologize about that. That's what's critical. Yeah, there's no or. The jury, the jury can, can, can award punitives without a, without finding malice or even an evil intent. I don't think these, I don't think these defendants were malicious. I think they were wrong. It talks about, in the jury instructions, it's in jury instruction number 24, Your Honor. And it says if you find under the plaintiff under instructions, which is the compensatory damage, the 1983 claim, and it has been proved that the conduct of the defendant as submitted in those instructions was malicious or recklessly indifferent to plaintiff's serious medical need to be free from exposure to secondhand smoke, then you may, but are not required to, award the plaintiff an additional amount of punitive damage for the purposes of punishing the defendant. It's, it's that or that's, that's gotten me. What, what's the, what's the record side to what you're reading? Where do I find it? In the appendix or whatever? You can find it on 629 to 639. It was quoted in the of what? 629 of what? It was the order denying. No, no, no, no. I want a record out. You just said you can find it on page. Well, I believe I mean, what of the Bible? The joint appendix, volume three, 629 to 639. Thank you. And you can find that the jury instruction number 24, which judge Lowry, the district court judge cited to this jury instruction. Thank you. Thank you. Thank you. I believe you used all of your, all of your time. Did you have something that you heard in the response or the reply that you feel we absolutely have to hear or need to hear to consider your case adequately? All right. Thank you. Court wishes to thank all counsel for your presence and argument and understand you all served as appointed counsel. Court appreciates your willingness to serve in that capacity. Is that complete? Our hearing document for the day and for the week. That being the case, we'll be in recess until further call.